**UNITED STATES of America, Appellee,**

v.

**Steven LYMAN, Appellant.**

**No. 89–5157.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 13, 1989.

Decided Dec. 29, 1989.

Rehearing and Rehearing En Banc
Denied Feb. 22, 1990.

Joseph S. Friedberg, Minneapolis, Minn., for appellant.

Lynn A. Zentner, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, BOWMAN and MAGILL, Circuit Judges.

LAY, Chief Judge.

Steven Charles Lyman was convicted of one count of possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1) (1982), and one count of the knowing and unlawful use of a firearm "during and in relation to a drug trafficking crime," 18 U.S.C. § 924(c)(1) (1982 & Supp. V 1987). He pleaded guilty to the first count but on the second he waived his right to a jury and stood trial before the district court.[1] The district court found him guilty on that count, and imposed the mandatory five-year term, to run consecutive to the sentence imposed for count one. Lyman appeals the judgment of conviction on the second count.

FACTS

On August 19, 1988, Minneapolis police officers obtained a warrant and searched Lyman's apartment. In a kitchen drawer and one cabinet, the police found cocaine and paraphernalia used in weighing, cutting, and packaging the drug. The cabinet also contained ammunition. In another kitchen cabinet police found three or four cloth bags pulled shut with drawstrings. The record describes these as "Crown Royal" bags, originally manufactured to hold bottles of liquor sold under that brand name. One of these bags contained a loaded pistol. The ammunition found in the other cabinet fit this handgun. In the other Crown Royal bags the police found assorted coins, but this cabinet contained no drugs or drug paraphernalia. The police found customer records and more cocaine in the adjacent dining area.

1. The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota.

The district court found that Lyman intended the handgun "to be available for possible use during drug transactions." The court emphasized that Lyman kept the gun in the kitchen where he also kept his supply of cocaine, and the gun was fully loaded. Because he intended to have the gun available, the court concluded that Lyman used the gun in relation to drug trafficking, in violation of 18 U.S.C. § 924(c)(1).

Lyman now urges on appeal that there existed an insufficient nexus between his possession of the firearm and his drug trafficking offense. He urges that he neither used nor carried the gun "during and in relation to any crime of violence or drug trafficking crime" as required to convict under 18 U.S.C. § 924(c)(1). The government urges that mere possession of a gun—even constructive possession—by a drug trafficker is sufficient evidence for conviction under section 924(c)(1).[2] We cannot agree that mere possession of a gun can sustain a conviction under section 924(c)(1). However, because in this case we find a sufficient nexus between the gun and the drug trafficking offense, we affirm the judgment of the district court.

DISCUSSION

Several other circuits have held that a conviction under section 924(c)(1) requires more than just possession of a firearm. In *United States v. Theodoropoulos*, 866 F.2d 587 (3d Cir.1989), the court held that guns found in a trash can on a porch outside defendant's apartment could not be for *use* in relation to the drug offenses taking place inside the apartment. The court therefore set aside one count of conviction for violation of section 924(c)(1). However, the court held that the defendant could be convicted of illegal *possession* of the guns pursuant to 26 U.S.C. § 5861 (1982). *Id.* at 595–97. Other circuits also have distinguished possession and use. *See United States v. McGhee*, 882 F.2d 1095, 1099 (6th Cir.1989) (guns concealed in hidden compartments in defendant's house might not

have been sufficiently readily available to support a conviction under section 924(c)(1), but under the lower guideline standard defendant could be found to possess the guns); *United States v. Feliz–Cordero*, 859 F.2d 250, 254 (2d Cir.1988) ("[S]ection 924(c) requires more than mere possession of a firearm").

The government argues that our decisions in *United States v. Matra*, 841 F.2d 837 (8th Cir.1988), and *United States v. LaGuardia*, 774 F.2d 317 (8th Cir.1985), stand for the proposition that mere possession suffices for conviction. The facts of these cases show, however, that the defendants did more than possess the guns; they created armed fortresses with several guns strategically placed for immediate use in an emergency. In *Matra*, police found ammunition in the kitchen, dining room, and in plain view in the two living rooms. They discovered loaded pistols hidden in the cushions of two living room sofas, and another gun sticking out of the zipper of a vacuum cleaner bag. In one bedroom a pistol lay under the bedcovers, and in another bedroom the police found a loaded assault rifle, loaded submachine gun, and a loaded shotgun. This court held that although the defendant did not have a gun on his person, he had control over the guns and ready access to them, and they clearly were "an integral part of his criminal undertaking." 841 F.2d at 843. The court had no difficulty holding that this record sufficiently supported the finding that the defendant "used" the guns during and in relation to drug offenses.

In *LaGuardia*, a search of the defendants' apartment uncovered, in addition to drugs, a loaded pistol in a purse in the defendants' bedroom, a loaded gun on a shelf in their hallway, and a rifle in the trunk of their car. This court held that the presence and availability of the weapons was such that they "had undoubted utility in the protection of the valuable supply [of

---

**2.** Under section 2D1.1(b)(1) of the sentencing guidelines the defendant may receive a two point enhancement for possession of a firearm during the commission of a crime. The Application Note states plainly that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." United States Sentencing Commission, *Guidelines Manual*, § 2D1.1, Comment. (n. 3) (Nov. 1989).

drugs] and of the cash on hand." 774 F.2d at 321. In light of the evident need for protection, the evidence was sufficient to support the jury's conclusion that the defendants "used" the weapons in relation to their drug trafficking crime. *Id.* Clearly, an abundance of loaded weapons strategically placed throughout a crack house amounts to more than mere possession; it shows readiness to use the weapons to support the drug operation should need arise.

The government also asserts that our decision in *United States v. Brett*, 872 F.2d 1365 (8th Cir.) *cert. denied,* —— U.S. ——, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989), represents a broad interpretation of "use". The police in *Brett* raided a crack house and found a gun in the possession of a person other than the defendant Gray, who fled the scene and was arrested several blocks away. The government implies that by upholding the section 924(c)(1) conviction against Gray, this court expanded the meaning of "use" beyond the holdings of *LaGuardia* and *Matra.* The government fails to note that Gray was found to be a co-conspirator in the distribution of cocaine from a crack house. Gray's co-conspirator admitted that he held the gun in order to provide security for the house's drug operations. *Id.* at 1368. This admission clearly proved intent by all members of the conspiracy to rely on the gun in an emergency.

While more than mere possession is required for a conviction under section 924(c)(1), the defendant need not actually brandish or discharge the weapon. *United States v. Matra,* 841 F.2d at 843. The legislative history makes clear that the key is whether the circumstances indicate "that the defendant intended to use the gun if a contingency arose or to make his escape." S.Rep. No. 225, 98th Cong., 2d Sess. 1, 314 n. 10 (1983) *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3492 n. 10. This court has held that the intent to use a weapon or weapons in connection with a drug trafficking offense may be inferred by their "presence and availability in light of the evident need." *United States v. LaGuardia,* 774 F.2d at 321. We think the Second Circuit in *Feliz–Cordero* succinctly

states the standard for determining "use" under section 924(c)(1):

> [I]n order for possession of a firearm to come within the "uses" provision of section 924(c), one of the following is required: i) Proof of a transaction in which the circumstances surrounding the presence of a firearm suggest that the possessor of the firearm intended to have it available for possible use during the transaction; or ii) The circumstances surrounding the presence of a firearm in a place where drug transactions take place suggest that it was strategically located so as to be quickly and easily available for use during such a transaction.

*United States v. Feliz–Cordero,* 859 F.2d at 254.

Based on this standard, the Second Circuit set aside a conviction for use of a gun found in a dresser drawer in the same apartment where the defendant kept drug paraphernalia. The court stated:

> On the evidence presented, there is no basis to conclude that the gun would have been quickly accessible if needed. Rather under the circumstances of this case, the intent to use the firearm must be presumed from the fact that a loaded gun was found in the same room as drug paraphernalia during the course of a search pursuant to a warrant. This is not sufficient evidence to sustain a conviction, even in light of our recognition of the frequent connection between firearms and narcotics trafficking.

*Id.* Lyman argues that finding a violation in this case contravenes the Second Circuit's admonition not to presume intent to use a firearm merely from the fact that it was found in the same room as drug paraphernalia.

We agree that this case is closer than *Matra, LaGuardia* or *Brett.* In *Matra* and *LaGuardia* an abundance of guns was in easy reach of the defendants. In *Brett* the gun was on the person of the defendant's co-conspirator, who admitted his intent to use it if necessary. In the present case a single loaded handgun was in a closed cloth bag in a kitchen cabinet next to

two or three other outwardly identical bags.

Nevertheless, we think the totality of circumstances here provides a sufficient basis to infer Lyman's intent to use the gun. Moreover, while it is not necessary for us either to accept or reject the Second Circuit's ruling, we find here a stronger nexus between the gun and drug trafficking than was the case in *Feliz–Cordero*. In *Feliz–Cordero* two brothers occupied apartments in the same building. The defendant, Feliz–Cordero, lived in apartment 3 and his brother, Feliz–Encarnacion, occupied apartment 5. A drug sale took place between a government informant and Feliz–Encarnacion in apartment 5. Some discussion of drug business among the two brothers and the informant occurred in apartment 3, but no drug sales. Later the police obtained a warrant to search both apartments 3 and 5. In apartment 5 the police found cocaine, cocaine base, and drug paraphernalia. In Feliz–Cordero's apartment they found a small quantity of cocaine, drug records, cash, a beeper, and, in a bedroom dresser drawer, a loaded revolver. 859 F.2d at 251–52. The opinion does not disclose whether all of the items seized from Feliz–Cordero's apartment were found together in the same room, nor whether the discussions of drug business took place in the bedroom where the revolver was stored. The case therefore does not reveal whether the gun was located in the same room or immediate vicinity where drug transactions actually occurred or were likely to have occurred, or where an agent or associate of a drug dealer might have stood guard during a drug transaction.

That fact distinguishes the present case. In the present case the record discloses that the gun was located in the area of the apartment where Lyman actually conducted his drug trade. All of the drug-related evidence was seized from the kitchenette and its adjacent dining area.[3] Having a loaded gun present in the same area where transactions took place makes it more likely that the gun would have been available if needed, and hence that the defendant intended to use it in an emergency.[4] Based on the evidence in the record the district court was not clearly erroneous in finding that the presence and availability of the gun demonstrated intent to use it. The judgment of conviction is affirmed.

---

3. Lyman testified that he conducted drug transactions both in the apartment and away from it.

4. The fact that a gun is located in a room that is not the center of drug transactions does not preclude the possibility that a drug dealer intended to use it to support his operations. Certainly if a drug house is an armed fortress with guns in several rooms, it is logical to surmise that even if the person actually conducting the transaction could not reach in an emergency some of the guns located in other rooms, he might rely on his associates to retrieve and use them in his aid. Each case turns on its specific facts. The key is always whether the placement of the gun or guns suggests they would be quickly available for use in an emergency.