UNITED STATES of America, Appellee,

v.

Xiong Yer KHANG, Appellant.

No. 89–5223.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 13, 1989.

Decided May 23, 1990.

Colia F. Ceisel, St. Paul, Minn., for appellant.

Joseph T. Walbran, Minneapolis, Minn., for appellee.

Before WOLLMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and McMILLAN,* United States District Judge.

HEANEY, Senior Circuit Judge.

Xiong Yer Khang pled guilty to the importation of opium. At the time of his arrest, a firearm was found in his home near a stash of opium. During the guilty plea stage and at the sentencing hearing, the government conceded that the firearm was not related to the importation charge. The district court, notwithstanding the government's concession, enhanced Khang's sentence two levels under U.S.S.G. § 2D1.1(b)(1) because it found that Khang possessed a firearm during a drug trafficking offense. We reverse and remand.

## BACKGROUND

Khang is a forty-year old military refugee from Laos. On December 28, 1987, U.S. Customs intercepted a parcel containing approximately 225 grams of opium. St. Paul police made a controlled delivery to Khang at his residence on January 8, 1988. At this time, they searched Khang's residence and found an additional 181 grams of opium in a closet. A loaded .22 caliber Baretta semi-automatic pistol was also found in the closet.

On January 15, 1988, another package from Laos containing 477.5 grams of opium arrived in the United States to be delivered by post to Khang. Customs also intercepted this parcel and made a controlled delivery to Khang on March 7, 1988.

On February 8, 1989, the federal government indicted Khang.[1] Khang and the government stipulated to the following: [1] Khang was guilty of importing 1,060 grams of opium; [2] under U.S.S.G. § 2D1.1 the base offense level was 20; [3] under U.S.S.G. § 3E1.1 Khang would receive a two-level reduction for acceptance of responsibility for a total offense level of 18; [4] the appropriate range was 27–33 months; and [5] the firearm found at Khang's residence had no relationship to the crime to which Khang pled guilty.

The district court accepted the guilty plea and ordered a presentence investigation report (PSI). The probation office calculated a total offense level of 20. The two-level discrepancy resulted from the probation office's conclusion that Khang's total offense level should be enhanced by two levels under U.S.S.G. § 2D1.1(b)(1) for possession of a firearm during the commission of the crime, a conclusion reached solely from reading reports supplied by the investigating authorities and the U.S. Attorney's office.

At sentencing, Khang objected to the two-level enhancement because the firearm was not used in conjunction with the importation of opium. According to Khang, he bought the firearm in 1981, several years before any event referred to in the indictment, in order to protect himself and his family from the frequent violence occurring in the housing projects where financial circumstances force him and his family to reside. In addition, at the sentencing hearing, Khang pointed to a stipulation where the government agreed the firearm had no

---

* The Honorable James B. McMillan, United States District Judge for the Western District of North Carolina, sitting by designation.

1. The government indicted Khang for the conspiracy to import and distribute opium, for two counts of importing opium, for the use of a firearm in a drug trafficking crime, and for the possession with intent to distribute opium. The government dismissed all but one of the counts in exchange for Khang's plea of guilty to one of the importing counts.

relationship to the crime:[2]

> Ms. Ceisel [counsel for Khang]: Your honor, in addition, there was a stipulation at the time the plea was entered that, between the parties, that the gun was unrelated to the offense pled to.
>
> Mr. Vosepka [Assistant United States Attorney]: That is my understanding also, your honor.

The district court, however, followed the recommendation of the probation office.

> This court in turn is dutibound [sic] to make an independent analysis of those facts as they apply to the information received by a stipulation or any other information that counsel may file by way of objection and other information to the presentence investigation report.
>
> I believe that it is incumbent upon this court to make its own determination.
>
> The court, having reviewed all of the factors involved, has come to the conclusion that it is appropriate to follow the presentence investigation report in this matter, and to determine *that the existence of the gun on a person* who is clearly involved in an ongoing process of opium importation continuing legal activity [sic] is of a nature that cannot be ignored by the Court in its determinations.

*United States v. Khang*, No. 3–89–17(1), Sentencing Transcript at 5–6 (D.Minn. Apr. 19, 1989) (emphasis added). The court then concluded that it was not "clearly improbable" that the firearm was connected with the crime. Thus, it calculated Khang's total offense level to be 20 and sentenced him to 33 months—the bottom of the sentencing range for an offense level of 20. The district court noted that 33 months was also the top of the range had the total offense level been 18.

After the sentencing hearing, the district court published its Statement of Reasons for Imposing Sentence. It stated:

According to the Sentencing Commission's commentary, § 2D1.1(b)(1) is to be construed liberally. "The adjustment should be applied if the weapon is present, unless it is clearly improbable that the weapon was connected with the offense." Guideline § 2D1.1 Application Note 3. In this case *the police discovered a loaded pistol hidden with a large quantity of opium*. The court cannot say that a connection between the gun and the offense is "clearly improbable."

## DISCUSSION

Initially, we note that the district court's statement that the firearm was on Khang's person may have been inadvertent. There is no evidence to support a finding that the firearm was on Khang's person at his arrest. Neither the prosecution nor the probation office asserted that the firearm was on Khang's person. The evidence reveals that the firearm was found in the Khang residence.

The issue presented is whether the district court's enhancement of Khang's sentence comports with the Sentencing Guidelines.[3] We hold that it does not.

Section 2D1.1(b)(1) of the Guidelines provides that "[i]f a firearm or other dangerous weapon was possessed during commission of [unlawful manufacturing, importing, exporting, or trafficking (including possession with intent to commit these offenses)], increase by 2 levels." Application Note 3 provides:

> The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

---

2. At the guilty plea hearing, the government conceded that the firearm had "nothing to do with the importation that was going on here." *United States v. Khang*, 3–89–17(1), Guilty Plea Transcript at 9 (D.Minn. Feb. 27, 1989).

3. Khang does not challenge, under due process grounds, that the prosecutor has de facto control of the sentence that will be imposed. *See United States v. Roberts*, 726 F.Supp. 1359, 1366–1368 (D.D.C.1989).

■ The Sentencing Guidelines must be strictly construed.[4] *Dowling v. United States*, 473 U.S. 207, 216, 105 S.Ct. 3127, 3132, 87 L.Ed.2d 152, 159 (1985); *Williams v. United States*, 458 U.S. 279, 290, 102 S.Ct. 3088, 3094, 73 L.Ed.2d 767 (1982); LaFave & Scott, *Substantive Criminal Law* § 2.2(d) (1986); Wharton & Anderson, *Criminal Law and Procedure* § 19 (1966). Chief Justice Marshall early observed:

> The rule that penal laws are to be construed strictly, is perhaps not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department. It is the legislature, not the Court, which is to define a crime, and ordain its punishment.

*United States v. Wiltberger*, 5 Wheat. 76, 95, 5 L.Ed. 37 (1820).

■ Guideline sentencing is an adversarial proceeding. *United States v. Scroggins*, 880 F.2d 1204, 1209 (11th Cir.1989). Once we embrace the adversarial nature of a sentencing procedure, the burden of proof falls on the party asserting the sentencing adjustment. In this instance, that party is the government because the enhancement for possessing a firearm is not a mitigating or exculpatory circumstance.[5] *See United States v. Wilson*, 884 F.2d 1355, 1356 (11th Cir.1989) ("[t]he guidelines contemplate that the government has the burden of proving the applicability of sections which would enhance the offense level and the defendant has the burden of proving the applicability of guideline sections which would reduce the offense level"). *But see United States v. Restrepo*, 884 F.2d 1294 (9th Cir.1989) (holding that the defendant bears the burden of disproving the enhancement because the enhancement is a mitigating circumstance). Rather, it is an aggravating circumstance involving a determination that a drug trafficking crime committed by a defendant possessing a firearm presents more harm or a greater risk of harm than the same crime committed by a defendant not possessing a firearm.

The Sentencing Commission premised its development of the Guidelines on Congress' desire to punish similarly situated defendants for all the possible harms of

---

4. "Criminal statutes must be strictly interpreted, both with respect to the act charged as the offense and the penalty imposed." Wharton & Anderson, *Criminal Law and Procedure* § 19 (1966). "The principle of strict construction does not mean that the statute must be given its narrowest possible meaning, nor that the words of the statute are not to be given their natural, reasonable, and accepted meaning.... Statutes are to be construed in their entirety so that each word is given a natural meaning.... The statute must not be construed so strictly as to defeat the obvious intent of the legislature." *Id.*

While these principles of construction have been cardinal to the criminal justice system since Chief Justice Marshall's era, many courts, in light of the urgency of the recent drug problem, have slighted or ignored these principles. This is particularly hazardous with the broad and wide-ranging effects of the new Sentencing Guidelines.

5. The dissent correctly notes that we hold that the government bears the burden of proving that the firearm was related to the offense which Khang committed.

Recently, a member of the Sentencing Commission and the Commission's Chief Deputy General Counsel stated the following regarding the allocation of the burden of proof:

> A defendant does not have a constitutional right to a specific sentence or to the lowest possible sentence, but rather, he is "entitled only to have his sentence correctly determined in accordance with the applicable law and based upon reliable evidence." *U.S. v. Urrego–Linares*, 879 F.2d 1234, 1239 (4th Cir. 1989) (citing *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948)). Moreover, the authors of the Sentencing Reform Act specifically rejected an approach that would entitle a defendant to the least severe sentence, favoring instead a framework designed to achieve the most appropriate sentence, considering the multiple purposes of sentencing.
>
> For these reasons, once the correct guideline and a base offense level are established, *the burden of persuasion as to specific offense characteristics and offense level adjustments properly should rest with the party asserting application.*

Wilkins & Steer, *Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines,* at 52 (published as part of the Workshop for Judges of the Sixth and Eighth Circuits, Jan. 8, 1990, New Orleans, La.) (some footnotes omitted) (emphasis added).

particular criminal conduct within a workable framework.

[Congress'] basic objective was to enhance the ability of the criminal justice system to reduce crime through an effective, fair sentencing system. To achieve this objective, Congress first sought *honesty* in sentencing.

.　.　.　.　.

Second, Congress sought *uniformity* in sentencing by narrowing the wide disparity in sentences imposed by different federal courts for similar criminal conduct by similar offenders. Third, Congress sought *proportionality* in sentencing through a system that imposes appropriately different sentences for criminal conduct of different severity.

U.S.S.G. Policy Statement: The Basic Approach (emphasis in original).[6]

The use of Specific Offense Characteristics marks the Sentencing Commission's endeavor to integrate the contradictory concepts of uniformity and proportionality. *Id.* This integration results in a sentencing system that focuses on the relationship of the conduct to the harm or risk of harm it creates.

The list of potentially relevant features of criminal behavior is long; the fact that they can occur in multiple combinations means that the list of possible permutations of factors is virtually endless. The appropriate relationships among these different factors are exceedingly difficult to establish, for they are often context specific. Sentencing courts do not treat the occurrence of a simple bruise identically in all cases, irrespective of whether that bruise occurred in the context of a

bank robbery or in the context of a breach of peace. This is so, in part, because the risk that such a harm will occur differs depending on the underlying offense with which it is connected (and therefore may already be counted, to a different degree, in the punishment for the underlying offense); and also because, in part, the relationship between punishment and multiple harms is not simply additive. The relation varies, depending on how much other harm has occurred.

*Id.*

Because of the aggravating nature of U.S.S.G. § 2D1.1(b)(1), because courts strictly construe penal statutes, and because of Congress' intent in developing the Guidelines and the Specific Offense Characteristics, the government must establish a relationship between a defendant's possession of the firearm and the offense which he or she has committed.

■ In light of these principles, the evidence presented does not support enhancing Khang's sentence under § 2D1.1(b)(1). The government stated at sentencing that the firearm had no relationship to the offense for which Khang pled guilty. The probation office added no new evidence from an independent investigation. It relied solely on reports produced by government investigators and prosecution attorneys. Because the government conceded that the firearm had no relationship to the importation of opium, the mere presence in Khang's residence of the loaded firearm near an opium stash at the time of Khang's arrest is not sufficient to justify enhancing Khang's sentence.[7]

---

**6.** For an interesting article detailing the history of the Guidelines and certain inconsistencies between the Guidelines as promulgated by the Commission and the congressional mandates of the Sentencing Reform Act, see Lindemann, *Opening the Federal Sentencing Guidelines to Alternatives,* 15 Wm. Mitchell L.Rev. 555 (1989).

**7.** The government argues that the language in Application Note 3, "unless it is clearly improbable that the weapon was connected with the offense," manifests the Commission's clear intent that the burden of persuasion be placed on the defendant. Khang therefore would carry the burden of disproving this enhancement.

We do not agree. *See also* Wilkins & Steer, *Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines,* at 51–53 (published as part of the Workshop for Judges of the Sixth and Eighth Circuits, Jan. 8, 1990, New Orleans, La.) (noting that the burden of proof for sentencing adjustments lies with the party asserting the adjustment). The plain meaning of "clearly improbable" refers to a standard of proof rather than a burden of proof. Moreover, such an interpretation would render the Commission's intent in developing Specific Offense Characteristics meaningless by mandating the enhancement in nearly every case.

The government's concession that Khang's firearm was not related to his importation of opium serves to distinguish this case from the other cases applying § 2D1.1(b)(1) in this Circuit. In each of the cited cases, the relationship between the underlying offense and firearm is plain. *See United States v. Green*, 889 F.2d 187 (8th Cir.1989) (defendant was operating a drug operation from her apartment where the firearm was found, and the firearm was readily accessible for use during a drug transaction); *United States v. Wagner*, 884 F.2d 1090 (8th Cir.1989) (the firearm was found near the front entry of a methamphetamine factory); *United States v. Koonce*, 884 F.2d 349 (8th Cir.1989) (stressing that the defendant was guilty of distribution rather than merely mailing methamphetamine, several firearms were found in defendant's home and truck, which he used to deliver packages of drugs); *United States v. Holland*, 884 F.2d 354 (8th Cir.1989) (firearm was found in a briefcase containing drug paraphernalia); *United States v. Jones*, 875 F.2d 674 (8th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989) (several firearms were found in close proximity to where Jones was distributing drugs).

We certainly agree with the observation in the dissent that the Guidelines do not permit the government to hide evidence from a district court or "to play Hide-the-Gun," but no effort to hide the firearm was made here. The government, rather, conceded that no evidence tending to prove that Khang's possession of the firearm was related to his importation of opium existed. In addition, there is no evidence in the record to suggest deceit or invalid purpose on the part of the government.

Since the government concedes that the firearm had no relationship to the importation of opium, Khang's sentence cannot be enhanced under § 2D1.1(b)(1) of the Guidelines. A firearm's mere "presence" is not sufficient to mandate application of the enhancement.[8] *United States v. North*, 900 F.2d 131, 134 (8th Cir.1990).

Following its conclusion that Khang's sentence should be enhanced two levels under § 2D1.1(b)(1), the district court stated:

> However, let me also advise at this point that the 18 total offense level as requested by defense counsel, and that is indicated, would provide a 27 to 33 month sentence. That the imprisonment range that was provided by the 20 level provides a 33 to 41 month range.
>
> I think the parties appropriately under this circumstance should be advised it is the intention of the Court to sentence in this case within the range of both matters at 33 months.

*United States v. Khang*, No. 3–89–17(1), Sentencing Transcript at 6 (D.Minn. Apr. 19, 1989).

---

The government also insists that Application Note 3 merely requires the presence of the firearm to establish its relationship to the crime. We disagree. The government's interpretation fails to comport with the Sentencing Guidelines principle of relating the sentence to the harm or risk of harm created by the defendant's crime. U.S.S.G. Policy Statement: The Basic Approach. If the government's interpretation stands, many defendants will receive sentence enhancements even though no additional harm or risk of harm was created by the presence of the firearm because of the firearm's relationship to the underlying offense. In addition, to hold that the mere presence of a firearm triggers the enhancement is inconsistent with the hypothetical set forth in Application Note 3. *United States v. North*, 900 F.2d 131, 135 (8th Cir.1990). Finally, the government's approach is inconsistent with the structure of the Guidelines. We are concerned with *Specific* Offense Characteristics rather than general offense characteristics. The former implies a relationship between the characteristic and the underlying offense. The latter, however, would imply that no relationship is necessary as with the *general* Adjustment Guidelines in Chapter 3 of the Guidelines.

**8.** This case is not controlled by *United States v. Lyman*, 892 F.2d 751 (8th Cir.1989). *Lyman* dealt with the issue whether mere possession of a firearm is sufficient to sustain a conviction under 18 U.S.C. § 924(c)(1). This Court disagreed but affirmed the defendant's conviction because the firearm was located in the area of the apartment where the defendant conducted his drug trade. Although the *Lyman* court notes that a defendant *may* receive a sentence enhancement under U.S.S.G. § 2D1.1(b)(1) for mere possession of a firearm *during* the commission of a crime, it rejected the government's argument that mere possession of a firearm *by a drug trafficker* is sufficient evidence under section 924(c)(1).

The Sentencing Commission specifically recognized that sentencing ranges for different offense levels overlap.

Each row in the table contains levels that overlap with the levels in the preceding and succeeding rows. By overlapping the levels, the table should discourage unnecessary litigation. Both prosecutor and defendant will realize that the difference between one level and another will not necessarily make a difference in the sentence that the judge imposes.... The table overlaps offense levels meaningfully, works proportionately, and at the same time preserves the maximum degree of allowable discretion for the judge within each level.

U.S.S.G. Policy Statement: The Guidelines' Resolution of Major Issues: *The Sentencing Table.*

■ The Commission did not intend that a claim involving overlapping sentencing ranges would not be reviewable. Rather, by overlapping sentencing ranges, the Commission attempted to eliminate the desire to appeal a sentence in certain circumstances. Moreover, we cannot say that the error is harmless because it is not clear to us that the district court, while recognizing that the sentence it gave Khang was within both ranges, would have given Khang the same sentence had it not applied the enhancement found in § 2D1.1(b)(1).

Accordingly, the enhancement under U.S.S.G. § 2D1.1(b)(1) is reversed, and this matter is remanded to the district court with directions that it resentence Khang consistent with this opinion.

WOLLMAN, Circuit Judge, dissenting.

The district court correctly held that it was required under the Guidelines to make its own determination regarding the presence of the gun. We have held time and time again that we will not reverse a district court's finding that the defendant possessed a firearm within the meaning of Guideline § 2D1.1(b)(1) unless the finding is clearly erroneous. *See, e.g., United States v. Luster,* 896 F.2d 1122 (8th Cir. 1990). Under the majority opinion's analysis, if the government wants to play Hide–the–Gun the district court is bound by the government's concession, no matter what the facts reveal. This is a remarkable limitation upon the district court's authority under the Guidelines, all the more remarkable in view of our willingness to blink the Guidelines' specific limitations upon the district court's discretion in departing downward from a guideline-required sentence. *See United States v. Big Crow,* 898 F.2d 1326 (8th Cir.1990).

We have held that a stipulation on the part of the government that a defendant has accepted responsibility for his offense is not binding upon the district court, the ultimate responsibility for determining whether a defendant is entitled to a sentence reduction for acceptance of responsibility resting upon the sentencing court. *See United States v. Cardenas,* 896 F.2d 317 (8th Cir.1990); *United States v. Nunley,* 873 F.2d 182 (8th Cir.1989). I would hold that the corresponding ultimate responsibility for determining whether a firearm was possessed during the commission of an offense is similarly placed with the sentencing court. What the majority opinion has done is to rewrite the Guidelines in the manner in which the majority wishes they had been drafted; that is, to require that the government prove as an element of the offense the collateral facts that bear only upon the sentence. Perhaps this should be the law; but as I read the Guidelines, it is not what is required of the government.

In any event, the sentence should be affirmed on the ground that the district court made it crystal clear (at least to me) that it would have imposed the same sentence had it adopted the offense level suggested by defense counsel. That being the case, a remand for resentencing is both unnecessary and useless.