UNITED STATES of America, Appellee,

v.

ABC, INC., d/b/a ABC Books, Inc.;
General Video Midwest, Inc.;
David Swanson, Appellants.

No. 90–1738.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 13, 1990.

Decided April 26, 1991.

Rehearing and Rehearing En Banc
Denied June 3, 1991.

Certiorari Denied Oct. 7, 1991.

See 112 S.Ct. 193.

Arthur M. Schwartz, Denver, Colo., argued, for appellants.

Alan L. Everett, Lincoln, Neb., argued, for appellee.

Before LAY, Chief Judge, HEANEY, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

HEANEY, Senior Circuit Judge.

Defendants ABC, Inc., General Video Midwest, and David Swanson appeal from their convictions for violating federal obscenity law. We affirm.

A jury convicted each defendant of one count of conspiring to use a common carrier to transport obscene materials in interstate commerce in violation of 18 U.S.C.

1. The trial court later set aside General Video Midwest's conviction under the second count since this company was not charged in that count.

2. The defendants also contend that (1) insufficient evidence supported their convictions, (2) the trial court erred in prohibiting certain evidence from being introduced at trial, and (3) the trial court improperly instructed the jury regarding various aspects of the *Miller v. Califor-*

§§ 371 and 1462 and one count of using a common carrier to transport obscene materials in interstate commerce in violation of 18 U.S.C. § 1462.[1]  ABC was fined $120,-000, and General Video Midwest was fined $80,000.  Swanson received twenty-four month concurrent sentences for each of the two counts of conviction and was fined $46,861.71.

On appeal, defendants raise numerous issues regarding their convictions, only one of which requires detailed discussion.[2]  Defendants also attack the sentences imposed on them under the sentencing guidelines.

■ Defendants argue that the district court erred in instructing the jury that "patent offensiveness," which is necessary to satisfy one of the prongs of the *Miller* obscenity test,[3] is to be measured by what the adult community will accept. Defendants argue that the appropriate standard should be one of toleration, not acceptance. Accordingly, they submitted the following jury instruction:

> The second prong to be applied [under *Miller*] in determining whether a film is obscene, is whether it depicts or describes sexual conduct in a patently offensive way....  In making this judgment you must measure whether the material is patently offensive by contemporary community standards;  that is, *whether it so exceeds the limits of what the adult community will tolerate as to be clearly offensive* [Emphasis added].

The trial court rejected defendants' proposed instruction and replaced the emphasized language with the following standard:

> whether it so exceeds the limits of what the adult community will *accept* as to be clearly offensive [Emphasis added].

*nia,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), standards for determining whether a material is obscene.  After reviewing the record, we conclude that the district court did not commit reversible error with respect to these issues.

3. *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), established the reigning three-prong test for determining obscenity.

Defendants claim that this instruction violates established case law. We disagree.

Defendants cite *Smith v. United States*, 431 U.S. 291, 97 S.Ct. 1756, 52 L.Ed.2d 324 (1977), for the proposition "that contemporary community standards must be applied by juries in accordance with their own understanding of the tolerance of the average person in their community. . . ." *Id.* at 305, 97 S.Ct. at 1766. Defendants argue that this language establishes a tolerance standard for determining patent offensiveness. Defendants fail to note, however, that in *Smith* "[t]he [district] court instructed the jury that contemporary community standards were set by what is in fact *accepted* in the community as a whole." *Id.* at 297–98, 97 S.Ct. at 1762 (emphasis added).

The Supreme Court affirmed the conviction in *Smith* and thus implicitly approved the use of an acceptance standard. We therefore cannot read *Smith* to require a tolerance standard. Indeed, our review of Supreme Court and Eighth Circuit opinions confirms that the district court's instruction was appropriate in this case. The Supreme Court has used the words "accept" and "tolerate" interchangeably. *See, e.g., Miller v. California*, 413 U.S. at 32, 93 S.Ct. at 2619 ("It is neither realistic nor constitutionally sound to read the First Amendment as requiring that the people of Maine or Mississippi accept public depiction of conduct found tolerable in Las Vegas, or New York City."). This court has similarly ruled that no error appeared in instructions using an acceptance rather than a tolerance standard. *See United States v. Cohen*, 583 F.2d 1030, 1043 (8th Cir.1978); *see also United States v. Easley*, 927 F.2d 1442 (8th Cir.1991) (concluding that the district court did not err in instructing jury under acceptance rather than tolerance standard). Based on this case law, we cannot rule that the district court erred in this case by instructing the jury under an acceptance standard.

Defendants also raise several sentencing guidelines issues. They first contend that the guidelines do not apply to them. The only two overt acts in furtherance of the conspiracy alleged to have taken place after the guidelines took effect on November 1, 1987 were those acts which served as the basis for the substantive offenses charged in Count IV of the indictment. Because each defendant was found not guilty of the acts charged in this count, defendants believe that the jury found the conspiracy for which defendants were judged guilty to have terminated before November 1, 1987. Defendants were convicted, however, of Count I of the indictment, which expressly charged that the conspiracy continued until May 12, 1988. We therefore do not find the defendants' argument persuasive. Accordingly, we affirm the district court's conclusion that the sentencing guidelines apply to the defendants.

Defendant Swanson next argues that the trial court erred in increasing his guideline range by two levels for obstruction of justice under guidelines section 3C1.1. At the time of his arrest and throughout the ensuing prosecution, Swanson used his alias, "David Swanson," rather than his birth name, "Michael Elmer Mohapp." The district court reasoned that this use of an alias warranted a two-level enhancement for obstructing justice and increased Swanson's offense level from 15 to 17. This enhancement increased Swanson's sentencing range from 18–24 months to 24–30 months. The court then sentenced Swanson to 24 months imprisonment.

The sentence of 24 months is within both guideline ranges, and thus would be permissible even if Swanson's contention with respect to the two-level enhancement was correct. The record indicates that if we were to remand this case for resentencing absent this two-level increase, the same 24-month sentence would be imposed by the district court.[4] This circumstance prevents

---

**4.** Several comments of the trial judge at the sentencing hearing convince us that the same 24–month sentence would be imposed if we were to remand this case for resentencing within an 18–24 month range. First, after noting that Swanson provided, inter alia, false informa-

us from reviewing the sentence on appeal. *See United States v. Khang*, 904 F.2d 1219, 1225 (8th Cir.1990).[5]

■ Swanson also contends that the district court erred in applying a four-level enhancement for his leadership role in the offense. This increase resulted from Swanson's position as president of both ABC, Inc. and General Video Midwest. Section 3B1.1 of the guidelines permits a four-level increase "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Because Swanson was an active president of the defendant companies, we are satisfied that the district court did not err in increasing Swanson's guidelines range for his leadership role.

For the foregoing reasons, we affirm the convictions and sentences of each of the defendants.

tion relative to his family, educational, and military backgrounds and was arrested on charges of driving while intoxicated while free on bond in this case, the court commented: "I suspect that [these factors] might warrant an upward departure from the guideline range but I choose not to depart upward." Second, and more importantly, the trial judge initially sentenced Swanson to 30 months imprisonment. Upon further reflection, however, he lowered the sentence to 24 months, but then emphatically stated: "I shall not depart more than that."

5. We note, however, that the United States Sentencing Commission recently announced that

"providing a false name or identification document at arrest [does not warrant an enhancement for obstruction of justice], except where such conduct actually resulted in a significant hindrance to the investigation or prosecution of the instant offense." United States Sentencing Commission, *Guidelines Manual*, § 3C1.1 Application Note 4(a) (Nov.1990). Although this commentary contradicts this circuit's holding in *United States v. Blackman*, 904 F.2d 1250 (8th Cir.1990), it became effective after Swanson's sentencing and thus is not applicable to his sentence. *See* 18 U.S.C. § 3553(a)(5) (1991).