UNITED STATES of America, Appellee,

v.

Napier S. RICHMOND, Appellant.

No. 94–1668.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 15, 1994.

Decided Oct. 7, 1994.

Carter Law, St. Louis, MO, argued, for appellant.

Steven E. Holtzshouser, Asst. U.S. Atty., St. Louis, MO, argued, for appellee.

Before McMILLIAN and MAGILL, Circuit Judges, and BOGUE,* Senior District Judge.

MAGILL, Circuit Judge.

Napier Richmond appeals the district court's[1] two level enhancement of his sentence for possession of a dangerous weapon during commission of a drug trafficking offense under U.S.S.G. § 2D1.1(b)(1). Richmond argues that the government failed to provide evidence sufficient to establish a "temporal and spatial connection" between a pistol and 326.82 grams of cocaine that were seized from his apartment. We affirm.

Richmond was sentenced to ninety-six months imprisonment after he pleaded guilty to possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). When St. Louis police officers responded to a complaint that Richmond was threatening two female neighbors with a pistol,[2] they found Richmond at the rear of his neighbors' residence. Richmond had no weapon on his person and denied having any knowledge of a gun. Richmond claimed that a witness named Leroy Sparkman could corroborate his version of the incident. The officers accompanied Richmond to his apartment where they found Sparkman at the top of some stairs leading to the apartment's only bedroom. After a lawful search, the officers discovered a loaded nine millimeter pistol in a box on the bed in the bedroom and approximately three quarters of a pound of cocaine in a locked box in the downstairs kitchen. Both neighbors testified at Richmond's sentencing hearing. They denied being involved in any drug transactions and described the events giving rise to the complaint to the police, including Sparkman's presence during the argument. Based on this testimony, the district court imposed a two level enhancement for possession of a dangerous weapon during commission of a drug trafficking offense.

■ "We will not reverse the district court's finding[ ] that defendant[ ] possessed [a] firearm[ ] for the purposes of 2D1.1(b)(1) unless [it is] clearly erroneous." *United States v. Lucht*, 18 F.3d 541, 555 (8th Cir.), cert. denied, — U.S. —, 115 S.Ct. 363, 130 L.Ed.2d 316 (1994). Relying upon *United States v. Hooten*, 942 F.2d 878, 882 (5th Cir.1991), Richmond argues that the district court clearly erred in imposing a § 2D1.1(b)(1) enhancement because the government failed to establish a "temporal and spatial connection" between the cocaine and the gun.

■ Our cases have consistently held that in order for § 2D1.1(b)(1) to apply, the government has to prove by a preponderance of the evidence that it is not clearly improbable that the weapon had a nexus with the criminal activity. *See, e.g., United States v. Bost*, 968 F.2d 729, 731–32 (8th Cir.1992) (quoting U.S.S.G. § 2D1.1, comment. (n. 3)). Although we have previously noted that the *Hooten* analysis may be helpful in assessing this probability in some cases, *Bost*, 968 F.2d

---

*THE HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

2. Richmond was in a dispute with his neighbors as to whether or not they had taken a piggy bank and coat from his apartment.

at 732, we need not decide whether the "temporal and spatial connection" spoken of in *Hooten* is the minimum showing required of the government in order to decide this appeal. In this case, the government has provided sufficient evidence to establish the *Hooten* connection and to establish that it is not clearly improbable that the weapon had a nexus with the criminal activity.

The evidence produced by the government clearly establishes a temporal connection between the gun and the cocaine. Richmond was in possession of the gun and the cocaine at the same time. The gun and the cocaine were found essentially simultaneously in Richmond's apartment. Richmond displayed the pistol in order to protect his property at a time during which he was in possession of the cocaine. The weapon was stored in an easily (and rapidly) accessible location and was loaded and ready for immediate use. This evidence is sufficient to establish any required temporal connection. *See, e.g., United States v. Pou,* 953 F.2d 363, 371 (8th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 1982, 118 L.Ed.2d 580, 581 (1992) (§ 2D1.1(b)(1) connection established where firearms seen in apartment of drug dealer during course of criminal activity); *United States v. Quintero,* 937 F.2d 95 (2d Cir.1991) (§ 2D1.1(b)(1) applied to case in which firearm possessed one month after date of offense) (cited at *Bost,* 968 F.2d at 733 n. 2); *cf. United States v. Matthews,* 5 F.3d 1161, 1165–66 (8th Cir.1993) (remanding for determination of whether § 2D1.1(b)(1) applies where gun seized more than one year after charged drug offense) (subsequent history omitted).

The evidence also establishes that the weapon has a spatial connection with the cocaine. The cocaine and the gun were found in the same one bedroom apartment. Although the cocaine was found in the kitchen while the gun was in the bedroom, these two rooms are not spatially distant from one another, and are both integral components of the living area of Richmond's apartment. Neither the gun nor the cocaine was found in a spatially isolated section of the apartment (*e.g.,* a locked closet, cabinet or basement). Both items were "out in the open." This evidence establishes a sufficient spatial connection. *See, e.g., Pou,* 953 F.2d at 371 ("Firearms were seen *in Joseph Pou's apartment* on more than one occasion, the same apartment from which cocaine was distributed. . . . This connection between the weapons and Pou's drug offenses is more than adequate for us to hold that the District Court did not err in enhancing Pou's sentence based on possession of a firearm in connection with a drug trafficking offense.") (emphasis added); *United States v. Wiley,* 997 F.2d 378, 386 (8th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 600, 126 L.Ed.2d 565 (1993) (§ 2D1.1(b)(1) enhancement properly applied where gun was in locked safe in another room when charged offense occurred); *United States v. Streeter,* 907 F.2d 781, 792 (8th Cir.1990), *other aspects overruled by United States v. Wise,* 976 F.2d 393 (8th Cir.1992) (en banc) (§ 2D1.1(b)(1) enhancement properly applied where charged marijuana found in attic of house and guns found on ground floor).

■ In light of this evidence and Richmond's demonstrated willingness to use the gun to protect his non-drug-related property, the district court reasonably may have concluded that Richmond used the gun to protect his substantial store of drugs. Richmond used the pistol to threaten his neighbors, whom he suspected of burglarizing his apartment. Richmond's use of the pistol not only was an unrelated assault designed to recover his piggy bank and coat, but was also a display of a weapon to secure the premises at which the drugs were stored by intimidating suspected burglars. In using the gun in order to provide increased security for his store of drugs, Richmond clearly satisfied the requirements of § 2D1.1(b)(1). We are therefore unable to conclude that the district court's findings that the gun was present and that the nexus between the gun and the cocaine was "not clearly improbable" were clearly erroneous. Richmond's reliance upon *United States v. Khang,* 904 F.2d 1219 (8th Cir.1990), is misplaced because in *Khang* "the government conceded that the firearm was not related to the [drug] charge." *Id.* at 1220. Accordingly, we affirm the district

court's two level enhancement of Richmond's sentence under § 2D1.1(b)(1).