# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2123

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Don D. Howard, | * |
| | * |
| Appellant. | * |

_____

No. 98-2322

_____

Appeals from the United States
District Court for the
Western District of Missouri

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Ruth Potts, | * |
| | * |
| Appellant. | * |

_____

Submitted: December 14, 1998
Filed: March 3, 1999

_____

Before LAY, McMILLIAN, and HALL,[1] Circuit Judges.

_____

HALL, Circuit Judge.

Don Howard ("Howard") appeals his conviction and sentence for aiding and abetting the possession of ephedrine with the intent to manufacture methamphetamine in violation of 21 U.S.C. § 841(d)(1). Ruth Potts ("Potts") appeals her sentence after pleading guilty to aiding and abetting the possession of methamphetamine in violation of 21 U.S.C. § 841(d)(1). The district court[2] sentenced Howard to forty-five months in prison, and sentenced Potts to twenty-eight months in prison. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm.

## I.    FACTS

At approximately 11:30 p.m. on January 16, 1996, detectives from the Jackson County Drug Task Force drove with a confidential informant past Potts' trailer. The detectives observed Howard's pickup truck parked in front of the trailer. The detectives dropped off the informant, and returned to the trailer shortly after midnight. The truck was still parked outside when they returned. Approximately one hour later, Howard exited the trailer and drove away in his truck. The detectives followed Howard and called for the Independence Police to make a traffic stop. A police officer stopped Howard a short time later.

_____

[1] The Honorable Cynthia Holcomb Hall, United States Circuit Judge for the Ninth Circuit, sitting by designation.

[2] The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

While frisking Howard, the officer found over $5500 in cash and a syringe in Howard's shirt pocket. Howard consented to a search of his truck, where officers found a loaded .45 caliber handgun under the driver's seat, a second syringe, a glass pipe with residue on it, and a cellular phone. Howard was arrested. Officers continued to search the truck, and found in a tool box black tubes and a plastic bag, both containing white powder. The powder in the bag was moist and smelled of solvent. When officers asked Howard what was in the tubes, he first stated that they contained "bunk," but later said they contained ephedrine. Lab tests on the powder showed that it was a binding agent that contained trace amounts of ephedrine.

At approximately 2:00 a.m. on January 17, 1996, police officers executed a search warrant for Potts' trailer. Inside the trailer, officers found Potts and two other individuals, Maasen and Hickerson. Potts' clothing was covered in white powder. In addition, officers found in the bedroom and bathroom numerous plastic, glass, and metal containers filled with white powder. Officers also found in the bedroom a coffee filter that contained methamphetamine residue, and found in the bathroom unused coffee filters. The bathroom sink also contained a white powder residue. The powder in the trailer was damp, and the trailer smelled of solvent. The powder was later determined to be ephedrine. Officers found in Potts' address book two numbers listed for Howard. In addition, officers found a .44 caliber pistol with ammunition lying nearby on the floor of Potts' bedroom. Potts stated that neither Maasen nor Hickerson had been in the bedroom, and Maasen and Hickerson stated that they had not left the kitchen or living room areas of the trailer.

Howard and Potts were charged with aiding and abetting the possession of ephedrine with the intent to manufacture methamphetamine in violation of 21 U.S.C. § 841(d)(1). Potts pled guilty, and Howard went to trial. At trial, a DEA agent, who took part in the execution of the search warrant and was qualified as an expert witness based on his investigations of over 300 methamphetamine labs, testified that in his

opinion Potts' trailer had been used to extract ephedrine from cold tablets.[3] In addition, another of the government's expert witnesses testified that it was probable that the white powder found in Howard's truck was the waste product from the cold tablets processed in Potts' trailer. Howard was convicted, and filed a motion for a new trial or, in the alternative, judgment of acquittal. The district court denied Howard's motion. At sentencing, the district court enhanced both Howard's and Potts' sentences for possession of a dangerous weapon under U.S.S.G. § 2D1.1. Howard and Potts timely appealed.

## II.     DISCUSSION

### A.     Sufficiency of the Evidence

Howard contends that the district court erred by denying his motion for judgment of acquittal because there was insufficient evidence to support his conviction. We will reverse the district court's denial of Howard's motion for judgment of acquittal only if, viewing the evidence in the light most favorable to the verdict and accepting as established all reasonable inferences that support the verdict, no reasonable jury could have found Howard guilty beyond a reasonable doubt. See United States v. Barrett, 74 F.3d 167, 168 (8th Cir. 1996); United States v. Ireland, 62 F.3d 227, 230 (8th Cir. 1995). The government introduced overwhelming evidence that Howard aided and abetted the possession of ephedrine with intent to produce methamphetamine.

Howard's truck was parked in front of Potts' trailer for at least an hour and a half before he was seen leaving the trailer in his truck. Officers found in Howard's

---

[3]Through the ephedrine reduction process, ephedrine is separated from cold tablets by combining cold tablets with a chemical solvent and then running the mixture through a filter. Coffee filters are commonly used.

-4-

truck over 5700 grams of moist, solvent-smelling white powder that contained trace amounts of ephedrine, a key ingredient for manufacturing methamphetamine. Howard told detectives that the white powder found in his truck was ephedrine. Both the white powder in Howard's truck and the white powder in Potts' trailer were moist and smelled of solvent. The government's expert testified that the 400 grams of ephedrine recovered from Potts' trailer could have produced 135 grams of methamphetamine. Cf. United States v. Parker, 32 F.3d 395, 402 (8th Cir. 1994) (allowing inference of intent to distribute from large quantity of methamphetamine). The government's expert witnesses testified that the binding agent in Howard's truck was probably the waste product from the ephedrine reduction process that was used to extract from cold tablets the ephedrine found in Potts' trailer. Howard was arrested with a loaded gun under his seat, a cell phone in his truck, over $5500 cash and a syringe in his shirt pocket, a second syringe on the floor of his truck, and a glass pipe with residue on it. Cf. United States v. Dawson, 128 F.3d 675, 677 (8th Cir. 1997) (allowing inference of intent to distribute from presence of firearm); United States v. Delpit, 94 F.3d 1134, 1153 (8th Cir. 1996) (allowing inference of intent to distribute from "presence of cash, drug paraphernalia, firearms, and other evidence of drug-dealing"). Officers found in Potts' trailer a coffee filter that tested positive for methamphetamine. In addition, an individual had gone to the trailer specifically to buy methamphetamine. Finally, Howard's name was listed twice in Potts' address book. Based on the overwhelming evidence of Howard's guilt, we affirm the district court's denial of Howard's motion for judgment of acquittal.

## B.    Admission of Expert Testimony

Howard next contends that the district court erred by allowing the government's expert witness to testify that the white powder found in Howard's truck was probably the waste product from the ephedrine reduction process performed in Potts' trailer. We will reverse the district court's decision to admit this testimony only if the district

court abused its discretion. See United States v. Roulette, 75 F.3d 418, 423 (8th Cir.), cert. denied, 117 S. Ct. 147 (1996).

The government's expert testified that cold tablets come in a variety of sizes and weights, and that they contain varying concentrations of ephedrine. Based on the amount of ephedrine recovered from Potts' trailer (almost 400 grams) and the amount of binding agent found in Howard's truck (over 5700 grams), the expert concluded that, using a variety of cold tablets, the ephedrine found in Potts' trailer "could have come from and probably did come from" the moist, solvent-smelling powder containing trace amounts of ephedrine that was recovered from Howard's truck. The expert was not required to know the specific brand and type of cold tablets used in the ephedrine reduction process to reach his conclusion. It was enough that the expert knew the percentage of ephedrine contained in the cold tablets that he used in his calculations. The district court therefore did not abuse its discretion. Because the expert's testimony was properly admitted, Howard's due process rights could not have been violated by the admission of that testimony.

## C.    Dangerous Weapon Sentencing Enhancement

Howard and Potts both contend that the district court erred by enhancing their sentences under U.S.S.G. § 2D1.1 for possession of a dangerous weapon. We will reverse the district court's dangerous weapons enhancement only if the district court clearly erred in finding that the .45 caliber handgun found under the driver's seat of Howard's pickup truck and the .44 caliber pistol found on the floor of Potts' bedroom were sufficiently connected to the offense. See United States v. Vaughn, 111 F.3d 610, 616 (8th Cir. 1997) (citing United States v. Betz, 82 F.3d 205, 210 (8th Cir. 1996)). The district court did not err because the government satisfied its burden to show "that a dangerous weapon was present and that it was not clearly improbable that the weapon had a nexus with the criminal activity." See Betz, 82 F.3d at 210.

With respect to Howard, the government showed that a loaded .45 caliber handgun was present in Howard's pickup truck under the driver's seat in which Howard was sitting. See id. at 211 (affirming dangerous weapon enhancement where weapon was readily accessible and loaded). Howard was using the truck to dispose of the waste product from the ephedrine reduction process that had been conducted to extract from cold tablets the ephedrine that was to be used to manufacture methamphetamine. Howard's reliance on United States v. Khang, 904 F.2d 1219 (8th Cir. 1990), is misplaced. In contrast to the government's stipulation in Khang that the weapon found with the drugs was unrelated to the crime, id. at 1220-21, the government here has not conceded that the weapon is unrelated to the crime. See United States v. Richmond, 37 F.3d 418, 420 (8th Cir. 1994) (distinguishing Khang on basis of government's stipulation). Similarly, Howard's reliance on United States v. Shields, 44 F.3d 673 (8th Cir. 1995), is misplaced. In contrast to Shields, in which the dangerous weapon was found during a search conducted over a month after the crime was committed, thereby making it impossible to know if the gun had any connection with the illegal activity, id. at 674, here the weapon was found simultaneously with the commission of the crime and the arrest. The district court therefore did not err by concluding that the weapon had a nexus to the crime.

With respect to Potts, the government showed that the .44 caliber pistol was present in Potts' bedroom. The gun was found on the floor next to ammunition and amid ephedrine and methamphetamine. See id. (sufficient if weapon readily accessible and ammunition nearby). Like Howard, Potts misses the mark by relying on Khang and Shields. In addition, Potts claims that the district court erred because the gun belonged to Maasen. However, the district court did not clearly err in applying the weapon enhancement to Potts because she stated that Maasen and Hickerson had not entered her bedroom the night the trailer was searched, and Maasen and Hickerson stated that they had remained in the kitchen and living room that night. The district court therefore did not err by concluding that the weapon had a sufficient nexus to the crime.

## III.    CONCLUSION

Based on the foregoing, we affirm the judgment of the district court.

AFFIRMED.



A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.