**UNITED STATES of America, Appellee,**

v.

**San Vidal G. BARRAGAN, a/k/a Joe Barragan, Appellant.**

**No. 90–1055.**

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 28, 1990.

Decided Oct. 2, 1990.

---

Douglas R. Dalgleish, Kansas City, Mo., for appellant.

Charles E. Ambrose, Kansas City, Mo., for appellee.

Before BOWMAN, WOLLMAN and BEAM, Circuit Judges.

BOWMAN, Circuit Judge.

San Vidal G. Barragan, convicted of aiding and abetting the extortionate collection of a gambling debt, appeals from the District Court's [1] denial of his motions for acquittal as well as the Court's enhancement of his sentence resulting from his codefendant's possession of a gun.

During 1987 and 1988, Barragan operated a business in the Metcalf South shopping center in Overland Park, Kansas.

[1] The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri. (Judge Sachs became Chief Judge of the Western District of Missouri on August 1, 1990.)

During that time Mark Vonelling, a United Parcel Service (UPS) driver whose route included Metcalf South, was looking for a bookmaker with whom he and Richard Fayard, another UPS employee, could place bets. Vonelling was directed to Barragan, who after being approached twice by Vonelling, connected Vonelling with a bookmaker named Bill Jones. Vonelling and Fayard began placing bets with Jones, winning some of them initially, but ultimately sliding so far into debt they no longer could pay up. Jones then attempted to collect his debt by threatening Vonelling and Fayard, both over the phone and in face-to-face meetings. On some of these occasions he either possessed or brandished a gun.

Vonelling and Fayard eventually contacted the Federal Bureau of Investigation (FBI), and agreed to cooperate in an investigation. Pursuant to an FBI plan, Fayard made weekly payments to Jones while Vonelling refused to pay. Jones accepted Fayard's money and continued threatening Vonelling. Meanwhile the FBI obtained search warrants on Jones and his automobile. During a meeting between Jones and Fayard, the FBI arrested Jones. A search of his car revealed a gun, three photographs of Vonelling, money, and gambling receipts.

Barragan's role in this whole series of events was primarily that of a middle-man. Aside from setting Vonelling up with Jones, Barragan both paid out and received gambling proceeds on Jones's behalf. He also took phone calls at his shop for Vonelling from Jones, and then would catch Vonelling making deliveries and tell him Jones was on the phone. On one occasion Barragan warned Vonelling to pay his debt to Jones, referring to Jones and Jones's associates as "animals" and "family." Trial Transcript at 56. In addition, Barragan surreptitiously took photos of Vonelling and gave them to Jones. While there is some dispute over the reasons he might

have done this, there is no question these were the same pictures the FBI found in Jones's car or that Jones used these pictures in an attempt to intimidate Vonelling.

As a result of these activities a five-count indictment was brought against Jones, with Barragan also being charged in one of the counts as an aider and abettor. Count one charged Jones with using extortionate means to collect the gambling debts of Vonelling and Fayard, and charged Barragan with aiding and abetting the same, each a violation of 18 U.S.C. § 894(a) (1988). Count two, later dismissed for technical reasons, charged Jones with carrying a firearm during the commission of a crime of violence, a violation of 18 U.S.C. § 924(c)(1) (1988). Counts three through five charged Jones with interstate transportation in aid of a racketeering enterprise, a violation of 18 U.S.C. § 1952 (1988).

Following the dismissal of count two, Jones entered a plea agreement whereby he plead guilty to count one and, for sentencing purposes, accepted a three-level increase to his base Offense Level[2] by reason of his possession of a gun during the commission of the offense. In exchange, counts three through five were dropped and the government agreed to not recharge him on count two.

Barragan went to trial. He was convicted by a jury, with the District Court denying his motions for acquittal. He received a sentence of thirty-seven months plus two years of supervised release. This sentence reflects an enhancement in Barragan's sentence resulting from Jones's possession of a firearm. On appeal Barragan challenges the denial of his motions for acquittal as well as the propriety of enhancing his sentence on the basis of Jones's possession of a gun.

■ Barragan's first argument is that there was insufficient evidence to support

---

**2.** Under the Federal Sentencing Guidelines, the range of sentences from which the sentencing judge ordinarily may choose is determined by separately calculating the defendant's Offense Level and his Criminal History category. U.S.S.G. Ch. 5, Pt. A, comment. (n. 1). These two calculations yield the vertical and horizontal components, respectively, of the Sentencing Table, U.S.S.G. Ch. 5, Pt. A, and thereby define the appropriate range of the defendant's sentence. U.S.S.G. Ch. 5, Pt. A, comment. (n. 1).

his conviction. We disagree. He essentially contends that the evidence failed to establish that he intended or desired to assist Jones in the extortionate conduct. When reviewing the denial of a defendant's motion for acquittal we examine the evidence in the light most favorable to the government, giving the government the benefit of any reasonable inference that may be drawn from the evidence. *U.S. v. Calkins,* 906 F.2d 1240, 1247 (8th Cir.1990); *U.S. v. Patterson,* 886 F.2d 217, 218 (8th Cir.1989) (per curiam); *U.S. v. Marin–Cifuentes,* 866 F.2d 988, 992 (8th Cir.1989). The denial of a motion for acquittal will be overturned only if we conclude, viewing the evidence in the light most favorable to the government, "a reasonable minded jury *must* have a reasonable doubt as to the existence of any of the essential elements of the crime charged." *Patterson,* 886 F.2d at 218 (*quoting U.S. v. White,* 562 F.2d 587, 589 (8th Cir.1987) (per curiam)) (emphasis in original). The essential elements of the crime may be established by circumstantial as well as by direct evidence. *Marin–Cifuentes,* 866 F.2d at 992.

The record in this case contains sufficient evidence to support Barragan's conviction. The evidence shows that Barragan knew of Jones's gambling enterprise, put Vonelling in touch with Jones, knew of Vonelling and Fayard's debts to Jones, took phone calls at his shop for Vonelling from Jones, and acted as a financial intermediary for Jones, collecting debts and distributing proceeds. Vonelling testified that Barragan referred to Jones and his associates as "animals" and "family," and had done so while telling Vonelling that he should pay his debt. Finally, Jones testified that at his request Barragan took photographs of Vonelling with which Jones attempted to intimidate Vonelling. Jones further testified that when he requested Barragan to take the photos he told him they would be used to scare Vonelling. Given this evidence, a reasonable jury could conclude that beyond a reasonable doubt Barragan intended to and did assist Jones in the extortionate activity, and we

therefore conclude that the District Court did not err in denying Barragan's motions for acquittal.

■ Barragan next contends that since Jones was not convicted on the weapon-possession charge and since Barragan was not charged with conspiracy nor was he even present during Jones's display of the gun, the District Court's enhancement of Barragan's sentence on the basis of Jones's weapon possession was improper. In support of this argument, Barragan relies upon *U.S. v. Williams,* 894 F.2d 208 (6th Cir.1990). This case, however, will not bear the weight Barragan assigns to it.

In *Williams,* defendants Davis and Blanton were the initial subjects of an undercover narcotics investigation conducted by Detective Harry Winings. Winings had been posing as a person interested in purchasing cocaine from Davis and Blanton, but prior to the conclusion of the investigation contact with Davis and Blanton was lost. Winings assumed the investigation had reached a dead end and made no further efforts to contact Davis or Blanton. However, ten days after contact was lost, Winings was called by a third defendant, Williams, who told Winings that Davis and Blanton gave him Winings's phone number. Williams agreed to complete the sale, and at the designated time and place arrived in a truck driven by Hoskins, the fourth and last defendant. Williams was arrested when he left the truck and presented a bag of cocaine to the undercover officer. Hoskins was arrested while he sat in his truck, and a 9 mm. semi-automatic Uzi pistol was discovered on the floor between his feet. All four defendants were charged with conspiracy to distribute as well as possession with intent to distribute cocaine. Williams and Hoskins also were charged with possession of a firearm in relation to drug trafficking. Davis, Blanton, and Williams were convicted of the possession and conspiracy charges, but neither Williams nor Hoskins was convicted on the weapons charge.[3] Ultimately Davis and Blanton received enhanced sentences as a result of the gun possession, but Williams did not.

---

**3.** Williams was acquitted on this charge, and the jury was hung with respect to Hoskins.

Upon review of these sentences, the Court of Appeals stated:

> We find that the district court's inconsistent application of the weapons possession enhancement with regard to co-conspirators Williams, Blanton and Davis created the type of disparity which the Guidelines seek to avoid. It is particularly inequitable to impute the possession of a weapon to co-conspirators who did not commit the conduct relevant to the enhancement, when the act of weapons possession is not *used* against the co-conspirator who allegedly did commit the relevant conduct. For these reasons, we find that it was an abuse of discretion for the district court, *without any explanation,* to apply the weapons possession enhancement to the sentences of Davis and Blanton, when the court had decided not to apply the enhancement to the sentence of co-conspirator Williams.

*Williams,* 894 F.2d at 213 (emphasis added). The court then reversed the sentence enhancements of Blanton and Davis.

It is quite clear that these reversals were the result of the inconsistent application of the Guidelines to Davis and Blanton, and not, as Barragan argues, the result of Williams's acquittal. In fact, *Williams* implies that Davis's and Blanton's sentences would have been affirmed had Williams also received an enhanced sentence.[4] *Williams* thus offers no comfort to Barragan.

 The District Court, in determining Barragan's sentence, adopted the probation officer's recommendation in the pre-sentence report of a three-level increase in Barragan's Offense Level as a result of Jones's possession of a firearm during the offense of conviction.[5] This adjustment was premised upon U.S.S.G. § 2E2.1(b)(1)(C), which requires the three-level increase for possessing, brandishing, or displaying a firearm during the commission of an offense, and U.S.S.G. § 1B1.3(a) which provides in part:

> Unless otherwise specified ... (ii) specific offense characteristics [which include § 2E2.1(b)] ... shall be determined on the basis of the following:
>
> (1) all acts or omissions committed or aided and abetted by the defendant or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction ... or that otherwise were in furtherance of that offense.

U.S.S.G. § 1B1.3(a).[6] The first comment to this section states that,

---

**4.** This conclusion follows from the court's early statement that a "conviction of a firearm offense is not necessary for application of § 2D1.1(b)(1)," *Williams,* 894 F.2d at 211 (dicta), and its holding that it would be "particularly inequitable" to enhance Davis's and Blanton's sentences for weapon possession if it is not "used" to increase Williams's sentence as well. *Williams,* 894 F.2d at 213. These statements compel the conclusion that the weapons possession could have been "used" against Williams without his being convicted on the weapons charge, and that had this been done, the sentence enhancements of Davis and Blanton would not have been "particularly inequitable." *Williams* also implies that Davis's and Blanton's sentences might have been upheld if the district court had provided an explanation for the inconsistent treatment. *See Williams,* 894 F.2d at 213 ("we find that it was an abuse of discretion for the district court, *without any explanation,"* to enhance Davis's and Blanton's sentences while refusing to enhance Williams's) (emphasis added).

**5.** This three-level increase in Barragan's offense level was partially offset by a reduction of two

offense levels because of Barragan's minor role in the crime. The sentencing judge indicated that if the firearm enhancement were removed, this would have little effect on the overall sentence since the two-level reduction would not have been granted had there not been an enhanced sentence. *U.S. v. Barragan,* No. 89-00084-02-CR-W-6, p. 6 (W.D.Mo. Dec. 15, 1989) (judgment). Thus, the most Barragan could accomplish here would be to reduce his offense level by one.

**6.** The pre-sentence report indicated that

> [r]elevant conduct includes all acts committed, or aided and abetted, by the defendant during the commission of the offense of conviction [1B1.3(a)(1)]. Application Note 1 from that section states that the relevant conduct includes conduct in furtherance of a conspiracy that was known to or reasonably foreseeable by the defendant.

This reflects the language of § 1B1.3(a)(1) as it appeared prior to the November 1989 amendment. U.S.S.G. App. C, p. 2-4, 43. This somewhat misleading pre-amendment language provides some textual support for Barragan's argu-

In the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant "would otherwise be accountable" also includes the conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant.

U.S.S.G. § 1B1.3, comment. (n. 1) (1989). Thus the plain language of the Sentencing Guidelines makes clear that, for the purpose of applying the weapon enhancement of U.S.S.G. § 2E2.1(b)(1)(C) to Barragan's sentence, the only relevant inquiries are: (1) whether Barragan was involved in criminal activity undertaken in concert with others; (2) whether Jones's possession and display of the gun was "conduct in furtherance of the jointly undertaken criminal activity"; and (3) whether that conduct was "reasonably foreseeable" by Barragan. This result is in accord with holdings in other circuits.[7]

■ As we already have determined that Barragan was properly convicted of aiding and abetting, and as Barragan does not dispute that Jones used the gun "in furtherance" of the extortionate activity, the only issue we must address is whether

Jones's possession and display of the gun reasonably was foreseeable by Barragan. This is a question of fact, we must affirm the District Court unless its finding is clearly erroneous. *U.S. v. Fitzwater*, 896 F.2d 1009, 1012 (6th Cir.1990).

The District Court made an explicit finding that Jones's possession and display of the gun was reasonably foreseeable to Barragan. The court based its finding upon the frequency and closeness of the interactions between Jones and Barragan, the details of which we already have discussed, Barragan's knowledge that Jones owned a weapon, and Barragan's supplying Jones with photos of Vonelling, knowing that they would be used for purposes of extortion. Based upon our review of the record, we cannot say that this finding is clearly erroneous.

The conviction and sentence are affirmed.

---

ment that a conspiracy charge was essential if his sentence was to be enhanced pursuant to U.S.S.G. § 1B1.3(a)(1). The amendments to § 1B1.3(a)(1) and its application notes were designed to eliminate this confusion, *see* U.S.S.G. App. C, p. 42, and now it is clear that a defendant need not be charged with conspiracy for his sentence to be enhanced via U.S.S.G. § 1B1.3(a)(1). *See* U.S.S.G. § 1B1.3(a)(1), comment. (n. 1). Since the 1989 amendments made no changes in the substance of the guideline but did clarify its application, we refer to U.S.S.G. § 1B1.3(a)(1) and its application notes as they appear following the 1989 amendments. A similar approach has been taken in the Fifth Circuit. *See U.S. v. Aquilera–Zapata*, 901 F.2d 1209, 1213–14 (5th Cir.1990) (finding amended U.S.S.G. § 1B1.3(a)(1) (1989) applicable in sentencing defendant despite the fact that defendant's conduct occurred prior to the enactment of the 1989 amendments). Here, Barragan has not raised this type of ex post facto challenge.

7. *See U.S. v. Aquilera–Zapata*, 901 F.2d 1209, 1211, 1213–15 (5th Cir.1990) (where the defendant was not convicted of conspiracy, never possessed a gun, and the defendant's co-perpetrator was not convicted of a firearm offense,

the court found U.S.S.G. § 1B1.3(a)(1) still required that the defendant's base Offense Level be raised to reflect foreseeable possession of a gun by the co-perpetrator during the offense of conviction, and therefore the court remanded the case for a specific finding on the issue of foreseeability); *U.S. v. White*, 875 F.2d 427, 429, 433 (4th Cir.1989) (defendant not convicted of conspiracy nor actually in possession of a gun found to be "otherwise accountable" under U.S.S.G. § 1B1.3(a)(1) for the possession of a gun by a co-perpetrator since "[t]he weapon was present, [the criminal participants] were acting in concert, ... [and] it was reasonably foreseeable to [the defendant] that his co-participant was in possession of a firearm"); *cf. U.S. v. Garcia*, 909 F.2d 1346, 1350 (9th Cir.1990) (defendant's sentence was properly enhanced for the foreseeable possession of a weapon by defendant's co-conspirator); *U.S. v. Lanese*, 890 F.2d 1284, 1292 (2nd Cir.1989), cert. denied, —— U.S. ——, 110 S.Ct. 2207, 109 L.Ed.2d 533 (1990) (U.S.S.G. § 2E2.1(b)(1)(C) "is satisfied by mere possession of the firearm during the crime, and does not require the particular defendant to have been in possession;" court reaches this conclusion without resort to U.S.S.G. § 1B1.3(a)(1)).