UNITED STATES of America, Appellee,

v.

Kevin Ray NASH, a/k/a Sebastien
Raye, Appellant.

No. 90–1006.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 10, 1990.

Decided March 25, 1991.

Morris D. Berman, Madison, Wis., for
appellant.

William M. Cromwell, Fort Smith, Ark.,
for appellee.

Before McMILLIAN, Circuit Judge, ROSS, Senior Circuit Judge, and STUART,* Senior District Judge.

ROSS, Senior Circuit Judge.

Defendant Kevin Ray Nash (a/k/a Sebastien Raye) appeals a 240 month prison sentence imposed on him by the district court.[1] We affirm.

## I. FACTS

In early October, 1988, FBI agents learned, through a confidential informant, that defendant was a major narcotics trafficker in Northwest Arkansas. An investigation ensued and agents learned that defendant was supplying cocaine to Michael Carter, James Clark and Curtis Walker. Drug charges were eventually brought against these three individuals. Charges were also brought against two other individuals, Randall Barnes and Milton Lemar, for transporting cocaine on defendant's behalf.

At one point in the investigation, defendant was observed at the Fayetteville, Arkansas airport, where he purchased with cash two tickets to Los Angeles. Defendant and his girlfriend then flew to Los Angeles. Based on the undercover investigation of Nash, the FBI obtained arrest warrants for defendant and all individuals involved in the scheme. On May 14, 1989, defendant and his girlfriend returned to Fayetteville and defendant was arrested. A search of defendant revealed $7,139.13 in cash (the currency tested positive for cocaine residue). Defendant's girlfriend was carrying a loaded semi-automatic weapon in her luggage; the weapon belonged to defendant.

A federal grand jury returned a joint indictment against defendant, Clark, Carter and Barnes. The jury found defendant guilty of 4 counts of conspiracy to distribute cocaine, 1 count of distributing cocaine and 4 counts of using a communication facility during the crime of cocaine distribution. Several of defendant's co-defendants testified against defendant at trial.

The presentence report set defendant's total offense level at 40. The court, relying on the presentence report, determined that defendant had been involved with 6 to 8 kilograms of cocaine and accordingly set defendant's base level at 32. *See* Sentencing Guidelines § 2D1.1(a)(3). In addition, the following adjustments were made:

(1) 2 point increase for possessing a firearm during the commission of the offense; (2) 4 point increase for being a leader or organizer in the offense; and (3) 2 point increase for obstruction of justice, based on the belief that defendant had threatened certain co-defendants in the case.

Defendant's criminal history category was set at level II; two points were added to the criminal history category because the government claimed that the instant offense was committed while defendant was on probation from an earlier offense. Under the Guidelines, a level II criminal history, when combined with a total offense level of 40, results in a sentencing range of 324 to 405 months imprisonment. However, defendant was sentenced only for 240 months, as this was the statutory maximum in this case.

On appeal, defendant argues that the district court erred in relying upon and accepting the recommendations of the presentence report. Specifically, defendant contends that there was no reliable evidence to support the court's determination that 6 to 8 kilograms of cocaine were involved. In addition, defendant contests the sentence enhancements he received for possession of a firearm and obstruction of justice. Lastly, defendant contends that the court erred in finding that the instant offense was committed while defendant was on probation and therefore, defendant argues that his criminal history level of II was incorrectly assigned.

---

* The HONORABLE WILLIAM C. STUART, Senior District Judge for the Southern District of Iowa, *sitting by designation.*

1. The Honorable H. Franklin Waters, United States District Judge for the Western District of Arkansas.

## II. DISCUSSION

### A. Quantity of cocaine involved.

Defendant claims that the district court erred in its determination of the quantity of cocaine attributable to him, as well as in its calculation of the base offense level. We do not agree.

■ Defendant argues that specific evidence at trial implicated him in somewhere between 139.6 grams and 441 grams of cocaine. However, under the Guidelines, § 2D1.4 Note 2, the sentencing court is entitled to approximate the quantity of a controlled substance if the amount of drugs seized does not accurately reflect the scale of the offense. *See United States v. Lawrence*, 915 F.2d 402, 405–09 (8th Cir. 1990). Here, the district court found that 6 to 8 kilograms of cocaine accurately reflected the extent of defendant's dealings. Based on this belief, the court set defendant's base offense level at 32.[2]

■ In determining the quantity of drugs involved in an offense, "[w]e must accept this finding of fact by the District Court unless it is clearly erroneous." *United States v. Winfrey*, 900 F.2d 1225, 1229 (8th Cir.1990); 18 U.S.C. § 3742(e). In the present case, the district court's finding was based largely on the trial testimony of the following individuals, which we find especially significant in supporting the court's determination of the quantity of cocaine attributable to defendant:

(1) Carter's testimony that defendant stated that he had 5 kilograms of cocaine available for distribution;[3]

(2) Walker's testimony that defendant had mentioned that he had 2 kilograms of available cocaine; and

(3) Bryan Tyler, defendant's prison cell mate, who testified that defendant stated he had arranged a purchase of 4 kilograms of cocaine while in California just prior to his arrest.

Defendant complains that he did not have the chance to rebut the evidence. We note that defendant seems to be arguing that he did not get to cross-examine the above witnesses at sentencing. However, the district court gave defendant ample opportunity to present witnesses or other evidence at sentencing in order to rebut the information contained in the presentence report. Furthermore, defendant had the opportunity to and did in fact cross-examine all three of these witnesses at trial.

Defendant's arguments have failed to meet the onerous burden of the clearly erroneous standard. We find that the testimony of Carter, Walker and Tyler more than adequately supports the trial court's determination of the quantity of cocaine attributable to defendant. *See United States v. Johnson*, 925 F.2d 1115, 1117 (8th Cir.1991); *United States v. Lowrimore*, 923 F.2d 590, 594–95 (8th Cir.1991).

### B. Firearm enhancement.

Section 2D1.1(b)(1) of the Guidelines provides that if a firearm was used during the commission of the crime, then the base level is to be increased by 2 levels. Application Note 3 states in part that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."

■ The government has the burden of establishing a relationship between a defendant's possession of the firearm and the offense which he or she has committed. *United States v. Khang*, 904 F.2d 1219, 1222 (8th Cir.1990). However, we will not disturb the factual findings of the district court unless they are clearly erroneous. *United States v. Turpin*, 920 F.2d 1377, 1386 (8th Cir.1990). Defendant argues that the firearm was not found on his person, that no witnesses testified that they saw him with the firearm and that the government failed to prove that the trip to California was connected with the drug offenses.

---

**2.** Section 2D1.1(a)(3) of the Guidelines dictates a base offense level of 32 for those offenses involving 5 to 14.9 kilograms of cocaine.

**3.** Clearly, Carter's testimony alone would be sufficient to support defendant's base offense level of 32, as that level applies to any offense involving 5 to 14.9 kilograms.

■ We are not persuaded by defendant's arguments. Here, there was evidence that defendant admitted to his prison cell mate, Bryan Tyler, that the purpose of the trip to California was to arrange the purchase of 4 kilograms of cocaine. A review of the record indicates that defendant had also told others that his supply of cocaine came from California. Furthermore, at the time of defendant's arrest, he had on his person over $7,000 in cash, which tested positive for cocaine residue. The loaded semi-automatic weapon was found in the luggage of defendant's girlfriend who had traveled to California with him. The gun belonged to defendant and that fact is not disputed here. Moreover, we recognize that guns are "tools of the trade" for drug dealers. *United States v. Koonce*, 884 F.2d 349, 354 n. 8 (8th Cir. 1989).

Taking all of these facts into consideration, we conclude that "the weapon was present and the connection to the offense not clearly improbable." *United States v. Wagner*, 884 F.2d 1090, 1098 (8th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990). We find that the 2 point firearm enhancement was correctly applied by the district court.

## C. Obstruction of justice enhancement.

Section 3C1.1 of the Guidelines calls for a 2 point enhancement if the defendant willfully impeded or attempted to impede the administration of justice during the investigation or prosecution of the offense. Application Note 1(d)[4] states that the following conduct provides a basis for applying this enhancement: "[T]hreatening, intimidating, or otherwise unlawfully attempting to influence a co-defendant, witness, or juror, directly or indirectly." Again, we will not disturb the factual determinations of the district court unless such finding is

clearly erroneous. *Turpin, supra*, 920 F.2d at 1386.

■ Here, there was testimony that defendant threatened his codefendants. Specifically, Carter testified at defendant's trial that defendant stated that Carter would be a "dead man" if he ever "narked [defendant] out." In addition, the court had taken *in camera* pleas of Clark and Carter as well as an *in camera* withdrawal of Barnes' plea. The probation officer testified at sentencing that he believed that these proceedings were held *in camera* for reasons connected with the safety of the co-defendants. Furthermore, Barnes allegedly told the probation officer that defendant had threatened Barnes at the time when Barnes made his plea.

Defendant complains that the above evidence is unreliable and that he had no chance to rebut any of this evidence relied upon by the court. Again, we disagree. We are satisfied that the district court allowed defendant to put on any witnesses or testimony he wished in order to rebut the findings set out in the presentence report. We have reviewed the record and cannot say that the district court's finding on this issue was clearly erroneous. Therefore, we hold that the 2 point enhancement for obstruction of justice was correctly applied.

■ In addition to the above three arguments, defendant also contends that certain information in the presentence report concerning statements made by a Brenda Rogers about defendant's involvement with one kilogram of cocaine in January of 1988 are unreliable, uncorroborated hearsay and should not have been used to increase defendant's criminal history category to Level II.[5] Defendant points to the case of *United States v. Fortier*, 911 F.2d 100 (8th Cir.1990), to support this argument. While application of the *Fortier* analysis may change defendant's criminal history category, it would have no effect on defendant's sentence.[6] Therefore, any error under

---

4. Now amended in Guidelines § 3C1.1 Application Note 3(a), effective November 1, 1990.

5. At sentencing, defendant's criminal history category was increased by 2 points because the Brenda Rogers' incident was found to have occurred at a time when defendant was on proba-

tion from an earlier conviction of attempted robbery. Guidelines § 4A1.1(d).

6. Even with a criminal history category of I, defendant would still have a total offense level of 40. Under the Guidelines, this translates to a range of imprisonment of 292 to 365 months.

*Fortier* is harmless and we need not consider it further.

## III. CONCLUSION

The sentence of the district court is affirmed.

This range exceeds defendant's sentence (the statutory maximum) of 240 months. In addition, we note that even an offense level of 37, with a criminal history category of I, would have justified a 240 month sentence.