# United States Court of Appeals
### For the Eighth Circuit

_____

No. 24-2829

_____

United States of America,

*Plaintiff - Appellee*,

v.

Ahmad Rashad Rhodes,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: June 12, 2025
Filed: August 19, 2025

_____

Before COLLOTON, Chief Judge, ARNOLD and GRUENDER, Circuit Judges.

_____

COLLOTON, Chief Judge.

Ahmad Rhodes was convicted of several drug and firearm offenses. On appeal, Rhodes challenges an order of the district court[*] denying his motion to suppress evidence. We conclude that there was no reversible error, and affirm the judgment.

On March 20, 2023, officers with a narcotics task force observed passengers at a bus station in Kansas City, Missouri. A Greyhound bus traveling from Los Angeles stopped at the station on its way to New York. Detective Antonio Garcia deployed a trained drug dog to sniff the bus and its contents. The dog alerted to a suitcase located in the luggage compartment. The dog also alerted to a backpack located in the bus's passenger compartment. Officers retrieved the suitcase and the backpack, and placed them on the station platform in an effort to identify the owner of the bags.

A man wearing a coat and fanny pack, later identified as Rhodes, approached the bags and reached for the backpack. Detective Collin Love asked Rhodes whether the backpack belonged to him, and Rhodes answered in the affirmative. Love advised Rhodes that a drug dog alerted to his bag, and asked Rhodes whether he was carrying any large sums of currency, illegal narcotics, or firearms. Rhodes admitted that he had a small amount of marijuana in his backpack. Love then asked permission to search Rhodes's backpack and to conduct a pat down search of his person. Rhodes consented. Love then asked Rhodes to take off his coat and fanny pack, and Rhodes placed them on a bench nearby.

---

[*]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable W. Brian Gaddy, United States Magistrate Judge for the Western District of Missouri.

While Love searched the backpack, Garcia began to speak with Rhodes. Rhodes was sitting next to the coat and fanny pack on the bench. Garcia asked to search the fanny pack. Rhodes declined to consent.

Garcia asked whether he could use his drug dog to sniff the bag instead, and Rhodes reached for the bag. As he was reaching, Rhodes stated that he had a gun in the bag. Garcia told Rhodes to remove his hands from the bag and attempted to place Rhodes in handcuffs. Rhodes did not comply, and a struggle ensued between Garcia and Rhodes. Several officers were needed to handcuff Rhodes.

Once Rhodes was secured, the officers moved him to an office in the back of the station and retrieved his other bags from the bus. Garcia searched Rhodes's coat and found a pill bottle containing pills that were later identified as fentanyl.

Once Rhodes was brought to the office, Detective Love returned and read Rhodes a form requesting permission to search his bags. Love removed the handcuffs, and Rhodes signed the consent form. Officers then searched the bags and seized a loaded firearm, more than 60 grams of methamphetamine, more than 330 grams of pills containing fentanyl, a quantity of marijuana, a digital scale, and packaging supplies.

A grand jury charged Rhodes with committing four offenses: possession with intent to distribute fentanyl; possession with intent to distribute methamphetamine; possession of a firearm in furtherance of a drug trafficking offense; and unlawful possession of a firearm as a felon. *See* 21 U.S.C. § 841(a)(1), (b)(1)(B); 18 U.S.C. §§ 924(c)(1)(A), (a)(8), 922(g)(1). Rhodes moved to suppress the evidence seized at the bus station. The district court denied the motion. At trial, a jury found Rhodes guilty on all counts. The district court sentenced Rhodes to 180 months' imprisonment, followed by four years of supervised release.

Rhodes challenges the district court's denial of his motion to suppress. We review the district court's legal conclusions *de novo* and its factual findings for clear error. *United States v. Mayweather*, 993 F.3d 1035, 1040 (8th Cir. 2021).

Rhodes first contends that the officers did not have probable cause to arrest him when he was handcuffed and detained inside the bus station. Probable cause exists when an officer has reasonably trustworthy information that is sufficient to lead a person of reasonable caution to believe that the suspect has committed or is committing a crime. *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949).

The officers had probable cause to arrest Rhodes at least for possession of marijuana. *See* 21 U.S.C. § 844(a). Detectives Garcia and Love testified that based on their training and experience, Greyhound buses from Los Angeles are often used to transport drugs through the Kansas City area. The drug dog alerted to the presence of drugs in Rhodes's backpack. Rhodes admitted that the backpack belonged to him and that the backpack contained marijuana. These facts and circumstances established probable cause to believe that Rhodes unlawfully possessed marijuana. *See United States v. Turpin*, 920 F.2d 1377, 1385-86 (8th Cir. 1990).

Rhodes also maintains that he did not voluntarily consent to the search of his bags because the officers created a coercive environment that induced him into giving consent. We review the voluntariness of a consent to search for clear error, considering the totality of the circumstances in determining whether the officer reasonably believed that the defendant consented. *United States v. Magallon*, 984 F.3d 1263, 1280-81 (8th Cir. 2021).

The district court found that Rhodes had some college education, prior experience with law enforcement, and general knowledge of his rights based on his initial refusal to consent to the search of his fanny pack. The court also determined that Rhodes did not appear to be intoxicated or under the influence of any controlled

substance; that the officers did not make any promises, threats, or misrepresentations; and that the officers did not engage in physical intimidation. These findings are not clearly erroneous, and they support a finding of voluntary consent. *See United States v. Thomas*, 97 F.4th 1139, 1142-43 (8th Cir. 2024).

Rhodes argues that officers placed him in a coercive environment by wrestling him to the ground, handcuffing him, taking him to a secluded room in the bus station, and soliciting consent without giving him warnings prescribed by *Miranda v. Arizona*, 384 U.S. 436 (1966). The use of handcuffs and the placement of a suspect under arrest or in custody does not preclude a finding of consent where other circumstances suggest voluntariness. *Magallon*, 984 F.3d at 1281; *United States v. Bearden*, 780 F.3d 887, 895 (8th Cir. 2015). Context is also relevant: Rhodes should have understood that he was wrestled to the ground and handcuffed because he refused to surrender a bag that contained a gun, not because he was under pressure to consent. The district court did not clearly err in finding that the indicia of voluntariness outweighed factors that might have weighed against a finding of consent. The district court properly declined to suppress evidence seized as a result of the consensual search.

The judgment of the district court is affirmed.

_____